UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: <u>16-80107-CR-ROSENBERG</u>

UNITED STATES OF AMERICA

        **Plaintiff,**

vs.

DAYNE ANTANI CHRISTIAN,
a/k/a "Shakur,"

        **Defendant.**

_____/

## FACTUAL BASIS IN SUPPORT OF PLEA

If this case were to proceed to trial, the United States would prove, beyond a reasonable doubt, the following facts, among others. This factual basis is being provided for the limited purpose of establishing a factual basis for the defendant's guilty plea pursuant to Fed. R. Crim. Pro. 11(b)(3) and is not inclusive of all the facts the United States would offer and prove at trial. The defendant, by his signature below, admits and agrees to the facts set out below.

1. On or about August 15, 2015, defendant DAYNE ANTANI CHRISTIAN, a/k/a Shakur, ("CHRISTIAN") was introduced by co-defendant Gregory Hubbard, a/k/a Jibreel, ("Hubbard"), to an individual who, unknown to both CHRISTIAN and Hubbard, was an FBI Confidential Human Source ("CHS"). The CHS was posing as an Islamic State of

Iraq and the Levant (ISIL)[1] follower who wanted to travel to Syria to engage in violent jihad. At that time, CHRISTIAN resided in Lake Park, Palm Beach County, Florida. CHRISTIAN met with his co-defendants and the CHS primarily in Palm Beach County during the conspiracy.

2. CHRISTIAN is a convicted felon. He was convicted in the Southern District of Florida for the offense of making a false statement to a firearms dealer in connection with the acquisition of a firearm and on or about May 25, 2010 was sentenced to one year and one day in prison. (Case. No.-10-CR-80006-DMM)

3. In recorded conversations during the course of the charged conspiracy with the CHS and co-defendant Hubbard and/or co-defendant Darren Arness Jackson, a/k/a/ Daoud ("Jackson"), CHRISTIAN represented that he was in contact with an ISIL member located inside Syria. Later, CHRISTIAN advised the CHS that his ISIL contacts had been compromised and that he would attempt to identify new contacts who could help Hubbard and the CHS in Syria. CHRISTIAN stated that he wanted to travel to Syria and join ISIL

---

[1] On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq, then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist Entity under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq as a FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist Entity under section 1(b) of Executive Order 13224 to add the alias ISIL as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never formally called itself "Al-Qaeda in Iraq," this name has frequently been used to describe ISIL through its history. In an audio recording publicly released on June 29, 2014, ISIL announced a formal change of its name to Islamic State ("IS"). To date, ISIL remains a designated FTO.

to engage in violent jihad. At various times during the conspiracy, CHRISTIAN and co-defendants Hubbard and Jackson, in recorded conversations with the CHS, talked about their support for ISIL and violent jihad, including acts of terrorism committed by and attributed to ISIL and its supporters. Both Hubbard and Jackson also expressed a desire to travel to Syria and join ISIL for the purpose of engaging in violent jihad. During many of their conversations, CHRISTIAN and the co-defendants used the term "soccer team" as a code word when referring to ISIL.

4. In various consensually recorded conversations between approximately December 2015 and July 21, 2016, CHRISTIAN stated to Hubbard and/or Jackson and the CHS that Muslims were waging an offensive jihad and had the right to do whatever was necessary to win. He also referenced the attacks in San Bernardino, California; Fort Hood, Texas; Orlando, Florida; and Nice, France, as justified attacks in fighting jihad. CHRISTIAN and Hubbard also shared with each other and Jackson and the CHS various links for ISIL propaganda materials, including beheading videos and websites.

5. By approximately early January 2016, CHRISTIAN offered his assistance to Hubbard and the CHS in their firearms practice. CHRISTIAN and co-defendant Jackson (at a later date) agreed to provide weapons for this firearms practice. However, since CHRISTIAN is a convicted felon and prohibited from possessing or handling firearms, CHRISTIAN indicated that in order for him to participate, the group would need to find a rural place to shoot where they could avoid detection by law enforcement.

6. On or about February 19, 2016, CHRISTIAN told the CHS that he had an AK-47 style assault rifle and he offered the weapon to the CHS and Hubbard for shooting practice.

3

CHRISTIAN added, "I have one like this big and another regular size." CHRISTIAN talked about going to gun shows and dealing with brokers who do not check IDs. CHRISTIAN added that the standard magazine for an AK-47 contains 30 rounds and that he was "trying to buy a hundred rounds" from someone. CHRISTIAN and the CHS discussed acquiring "about 200 AK rounds" and how "it should be enough" for target practice.

7. On or about May 14, 2016 Hubbard stated to the CHS that he wanted to depart the United States and travel to Syria to join ISIL. Hubbard asked the CHS to help him in making travel plans.

8. On or about May 23, 2016, CHRISTIAN sent text messages to Hubbard and the CHS containing a link to an audio recording released by ISIL spokesman Mohammed al-Adnani. CHRISTIAN also sent written versions of the same statement in English and Arabic. The statement, released on or about May 21, 2016 by ISIL, threatened the United States and Europe with attacks during Ramadan and called on ISIL supporters to take action in "the heartland" and also encouraged targeting civilians.

9. On or about June 3, 2016, CHRISTIAN, Hubbard and the CHS met and discussed ISIL and its activities. Hubbard mentioned a beheading video that he had shown to the CHS. CHRISTIAN was already aware of the video as well as another video that showed ISIL members crushing an individual's skull with a large rock. Hubbard and CHRISTIAN both expressed favorable views of the video.

10. On or about June 5, 2016, CHRISTIAN and Hubbard met with the CHS at a residence in Royal Palm Beach, Florida. At this meeting CHRISTIAN handed the CHS a Mossberg International 715P .22 caliber semi-automatic pistol (Serial No. EMJ3965915), which was to be used for target practice with Hubbard. The weapon included a magazine with

4

approximately 25 rounds of ammunition. Hubbard and the CHS made plans to shoot the Mossberg 715P on or about June 8, 2016. CHRISTIAN also displayed a semi-automatic pistol to the CHS, which he claimed to carry at all times. Also at this meeting the conversation turned to ISIL's ongoing fight to establish the Caliphate.

11. On or about June 7, 2016, Hubbard and the CHS both booked roundtrip airplane tickets through Orbitz from Miami, Florida to Berlin, Germany. They planned that Hubbard would travel to Europe on his way to Syria, and that the CHS would accompany Hubbard on the trip. Hubbard and the CHS were scheduled to depart Miami on July 21, 2016, and connect through Newark, New Jersey, to Berlin, arriving on July 22, 2016. The return ticket was booked for August 15, 2016, which, according to Hubbard's plan, would give the appearance that Hubbard and the CHS were visiting Europe for three weeks.

12. On or about June 24, 2016, the CHS picked up Hubbard from his apartment and asked Hubbard to send CHRISTIAN a message that he will meet him for "the item," a reference to the AK-47 style assault rifle. Later, CHRISTIAN met with Hubbard and the CHS, at which point both Hubbard and CHRISTIAN commented that killing the "kuffar" (disbeliever) is permissible during times of war. The CHS asked CHRISTIAN if he still has the firearm and CHRISTIAN advised he still had the "Kalashnikov" and that he will provide it to the CHS. CHRISTIAN invited the CHS to pick up the weapon at his residence. Hubbard told CHRISTIAN that if he (Hubbard) must leave town, he would leave CHRISTIAN his ammunition for his (CHRISTIAN's) "own mission."

13. On or about June 26, 2016, the CHS received a text message from CHRISTIAN advising that "the Bible," a code word for the AK-47 style assault rifle, was ready to be picked up. The CHS drove to CHRISTIAN's residence in Lake Park, Florida, where CHRISTIAN came

outside with the rifle (Serial No. MF9479) wrapped in a sweater. This weapon had been manufactured in Romania and imported into the United States through Vermont, and thus had traveled in interstate and foreign commerce. CHRISTIAN also provided the CHS with one magazine and 20 rounds of Winchester 7.62 x 39mm ammunition. The CHS commented that this was the type of heavy weaponry that Hubbard and the CHS would need to use in Syria. CHRISTIAN agreed. CHRISTIAN advised that he was getting his affairs in order and that, Allah willing, he and his family would travel to Syria as well. This meeting was not audio-recorded but was captured by a pole camera.

14. On or about June 30, 2016, Hubbard sent a group text message to CHRISTIAN and the CHS. The message contained a link to an Anwar al-Awlaki video encouraging violent jihad.

15. On or about July 9, 2016, Jackson, Hubbard, the CHS, and another known individual conducted firearms practice at a remote wildlife management area located in Palm Beach County. CHRISTIAN was not present on this date. The group initially shot pistols and, after lunch, the group began shooting rifles, to include the AK-47 style assault rifle provided by CHRISTIAN to the CHS on June 26, 2016. Jackson also provided the following weapons for shooting practice on this date: two pistols (one 9 mm and one .40 caliber), one AK-47 style assault rifle, and one 12-gauge shotgun.

16. On or about July 12, 2016, CHRISTIAN and the CHS met for lunch. CHRISTIAN stated that Hubbard had told CHRISTIAN earlier that he was going to Syria to join ISIL for training but might come back. CHRISTIAN and the CHS discussed the fact that others knew of the impending travel to Syria of Hubbard and the CHS. The CHS told CHRISTIAN that the

       CHS was going with Hubbard but not staying. The CHS confirmed to CHRISTIAN that Hubbard and the CHS were departing on July 21, 2016.

17. On or about July 16, 2016, CHRISTIAN, co-defendant Jackson, the CHS, and a known individual, drove to the same remote wildlife management area used for target practice on July 9, 2016. Hubbard was not present. At one point CHRISTIAN and Jackson indicated that they did not have enough ammunition and the group stopped at Wal-Mart to purchase additional rounds. During the drive to the shooting location, CHRISTIAN spoke about ISIL training people and sending them back to their homelands to conduct attacks. CHRISTIAN opined that it hurts the enemies of ISIL more to attack their homelands than to kill them on the battlefield.

18. Upon arrival at the wildlife management area, Jackson brought out the same weapons used during the firearms practice on or about July 9, 2016. The CHS brought CHRISTIAN's Romanian-manufactured AK-47 style rifle that CHRISTIAN had given him on June 26 in Lake Park, Florida. The CHS asked CHRISTIAN if the CHS could keep it for more practice prior to his and Hubbard's planned departure for Syria and CHRISTIAN agreed. Both CHRISTIAN and Jackson provided firearms instruction to the CHS, describing how accurate the weapons were from various distances and demonstrating the proper position for handling and firing them. CHRISTIAN also showed the CHS how to load, unload, and break down the AK-47 style rifle.

19. On or about July 21, 2016, co-defendant Jackson drove co-defendant Hubbard and the CHS from West Palm Beach to Miami International Airport so that Hubbard and the CHS could depart for Syria. After Jackson dropped them off, Hubbard and the CHS obtained their boarding passes at the ticket counter. Hubbard and the CHS cleared through the TSA

checkpoint at which point Hubbard was arrested. CHRISTIAN was arrested at his place of employment later that day.

BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

Date: 3/29/17   By: _____
EDWARD C. NUCCI
ASSISTANT UNITED STATES ATTORNEY

Date: 3/29/17   _____
MICHAEL SALNICK
ATTORNEY FOR DEFENDANT

Date: 3/29/17   _____
DAYNE ANTANI CHRISTIAN
DEFENDANT